**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| NELDA SEIDEL, INDIVIDUALLY, AND AS *ADMINISTRATOR AD PROSEQUENDUM* AND GENERAL ADMINISTRATOR OF THE ESTATE OF EARL R. MR. BROWN, JR., <br><br>*Plaintiffs*, <br><br>v. <br><br>THE EGGO COMPANY, KELLANOVA, JOHN DOES, ABC PARTNERSHIPS & XYZ CORPORATIONS, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, <br><br>*Defendants*. | HONORABLE KAREN M. WILLIAMS <br><br>Civil Action <br>No. 24-8402 (KMW-SAK) <br><br><br>**OPINION** |

APPEARANCES:

Lee J. Hughes, Esquire
GRUCCIO PEPPER DE SANTO & RUTH PA
817 East Landis Ave
PO Box 1501
Vineland, NJ 08362
    *Counsel for Plaintiffs*

Kaitlyn E. Stone, Esquire
BARNES & THORNBURG LLP
1776 on the Green
67 East Park Place, Ste. 1000
Morristown, NJ 07960
    *Counsel for Defendants*

**WILLIAMS, District Judge:**

    **THIS MATTER** comes before the Court upon Defendants The Eggo Company and Kellanova's ("Defendants") Motion to Dismiss (ECF No. 8) Plaintiffs Nelda Seidel and the Estate of Earl R. Brown Jr.'s ("Plaintiffs") Complaint (ECF No. 1). Plaintiffs oppose the Motion (ECF

No. 9), and Defendants replied (ECF No. 11). The Court has reviewed Plaintiffs' Complaint and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED.**

## I.   FACTUAL BACKGROUND[1]

### a. Plaintiff's Initial Lawsuit

Plaintiffs initially filed a Complaint in the Superior Court of New Jersey, Cumberland County, which Defendants removed to this Court on April 19, 2024. (*See Seidel v. Kellogg USA*, No. 1:24-cv-5348.) Plaintiffs alleged that Earl Brown Jr. ("Brown") lost consciousness and fell near a restroom due to a physical ailment, and that Defendants' employees were "careless, reckless, negligent and/or intentional" in treating Brown's injuries. (*See id.* at ECF No. 1-1 ¶¶ 3-4.) On May 30, 2024, Plaintiffs voluntarily dismissed their Complaint pursuant to Federal Rule of Civil Procedure 41. (*See id.* at ECF No. 9.)

### b. The Instant Action

Plaintiffs filed the instant action on August 12, 2024, alleging the same facts set forth in the initial lawsuit and additional allegations. (*See* Compl., ECF No. 1.) The Complaint alleges that Brown was a labor activist who participated in filing grievances against Defendants prior to August 15, 2022. (*Id.* ¶¶ 5-7.) According to Plaintiffs, it "appeared" Brown was assigned dangerous work "in an effort" to cause serious bodily harm and death. (*Id.* ¶ 10.) On August 15, 2022, Brown "lost consciousness and fell" and struck his head while at work, causing him to bleed. (*Id.* ¶ 11.) Plaintiffs allege that Brown's supervisors "intentionally failed to call for appropriate medical

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989). The facts are taken from Plaintiffs' Complaint and filings from the initial lawsuit, which are matters of public record. *See Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F.Supp. 2d 543, 551 (D.N.J. 2013).

assistance," but instead ordered Brown to be placed in a chair and "when obviously unable to return to work, make his own arrangements for treatment off site." (*Id.* ¶ 12.) Specifically, Plaintiffs allege that Brown's supervisor "ordered him to walk to his car (assisted by two employees) to retrieve his telephone to make a call" to his friend, David Dunham, "to assist him." (*Id.* ¶¶ 12-13.) Plaintiffs allege that Brown was advised to seek medical treatment at an urgent care facility before returning to work. (*Id.* ¶ 15.) Dunham took over an hour to get to Brown's location, at which point he drove Brown to an emergency room. (*Id.* ¶¶ 14, 16.) Plaintiffs allege that Brown arrived at the emergency room unconscious and, despite the efforts of the emergency medical team, succumbed to his injuries. (*Id.* ¶ 17.) Plaintiffs also allege that the emergency room physician "advised that the outcome would have been different if [Brown] was properly treated in the workplace." (*Id.*)

Plaintiffs claim that Defendants' failure to assist Brown in addressing his injuries and resulting condition were a direct cause of his death. (*Id.* ¶ 18.) Plaintiffs further allege that "Defendants, through their employees, acted with knowledge and intent and in accord with a prior pattern of intentional conduct toward [Mr. Brown]." (*Id.* ¶ 20.) According to Plaintiffs, Defendants' actions were "outside the purview of the industrial setting and, as such, were not a risk inherent with the work performed." (*Id.* ¶ 21.) Plaintiffs assert four unlabeled counts against Defendants which do not state the respective causes of action. (*See generally* Compl.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual

3

allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

### III. DISCUSSION

#### a. The New Jersey Workers' Compensation Act Bars Plaintiffs' Claims

"When the New Jersey legislature enacted the New Jersey Workers' Compensation Act [(the "WCA")], it made that 'statutory workers' compensation remedy its preferred mechanism for providing compensation to injured workers.'" *Paracha v. Darling Ingredients Inc.*, No. 23-2931, 2024 WL 5001909, at *2 (3d Cir. Dec. 6, 2024) (quoting *Van Dunk v. Reckson Assocs. Realty Corp.*, 45 A.3d 965, 966 (N.J. 2012)). The WCA constitutes a "trade-off whereby employees relinquish[ ] their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer[ ] injuries by accident arising out of and in the

4

course of employment." *Faiella v. Sunbelt Rentals, Inc.*, No. 18-11383, 2021 WL 5980176, at *4 (D.N.J. Dec. 17, 2021) (quoting *Millison v. E.I. Du Pont de Nemours & Co.*, 101 N.J. 161, 173–74 (1985)). "The [WCA]'s remedy is exclusive, except for injuries that result from an employer's 'intentional wrong'; for those, an injured employee is permitted to maintain a common-law tort action against the employer." *Paracha*, 2024 WL 5001909, at *2 (quoting N.J.S.A. § 34:15-8). The WCA provides in relevant part:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong*.

N.J.S.A. § 34:15-8 (emphasis added).

"The New Jersey Supreme Court has created a two-prong test to determine whether or not an employer's conduct constitutes an 'intentional wrong.'" *Faiella*, 2021 WL 5980176, at *4 (quoting *Laidlow v. Hariton Machinery Co., Inc.*, 170 N.J. 602, 617 (2002)); *see Paracha*, 2024 WL 5001909, at *2. Namely:

> (1) the employer must know that [its] actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

*Laidlow*, 170 N.J. at 617.

First, courts address the "conduct prong" by "examining the employer's conduct in the setting of the particular case." *Paracha*, 2024 WL 5001909, at *2. "Mere knowledge by an employer that a workplace is dangerous" does not suffice. *Id.* Nor does reckless conduct. *Id.* "It is not enough that "a known risk later blossoms into reality. We must demand a virtual certainty." *Id.* Second, the "context prong" requires courts to consider "whether the resulting injury or disease,

5

and the circumstances in which it is inflicted on the worker, may fairly be viewed as a fact of life of industrial employment, or whether it is plainly beyond anything the legislature could have contemplated as entitling the employee to recover only under the [WCA]." *Id.* "The substantial-certainty standard is met only if both prongs are satisfied." *Id.* (citing *Laidlow*, 790 A.2d at 892).

New Jersey courts have held that an employer entrusting an injured employee to a friend or family member does not constitute intentional misconduct that is exempt from the WCA's exclusivity provision. In *Applegate v. Arch Aluminum & Glass, Inc.*, Slip Op. No. A-1122-06T3, 2007 WL 2570224 (App. Div. Sept. 7, 2007), the employee-plaintiff fell ill due to his diabetes and his supervisor urged that an ambulance be summoned, but the plaintiff insisted that his son be called instead. *Id.* at *1. The plaintiff sustained several strokes by the time his son arrived and took him to the hospital. *Id.* at *2. The plaintiff sued his employer, arguing that the WCA did not bar his claim because his employer's failure to summon an ambulance constituted an intentional wrong. *Id.* at *1-2. The trial court disagreed, and the plaintiff appealed. *Id.* at *1. In affirming the trial court's grant of summary judgment, the appellate panel held that: "Although, in retrospect, it appears that [the defendant] made an incorrect decision in entrusting [the plaintiff] to the care of his wife and son . . . in the circumstances presented, its decision to do so does not rise to the level required by N.J.S.A. 34:15-8." *Applegate*, 2007 WL 2570224, at *3.

Here, Plaintiffs do not allege that Brown's underlying injury was caused in any way by an intent to harm Brown. (*See generally* Compl.) Rather, Plaintiffs assert that Brown's supervisors "intentionally failed to call for appropriate medical assistance" and that Defendants' "failure to assist" Brown "in properly addressing his injuries and resulting condition" caused his death. (Compl. ¶¶ 12, 18.)

While Plaintiffs assert that Defendants assigned Brown dangerous work "in an effort" to cause him "serious bodily harm and even death," Plaintiffs do not allege that Brown initially lost consciousness and fell because of the "dangerous" work that Defendants assigned him. (*Id.* ¶ 10.) Moreover, Plaintiffs do not allege that Defendants deliberately "failed" to call for medical assistance with the intent to cause injury or death to Brown. Nor do Plaintiffs allege that Defendants were virtually certain that serious injury or death would result if they did not summon the appropriate medical assistance, only that their alleged failure culminated in Brown's death. *See Paracha*, 2024 WL 5001909, at *2 (holding "[i]t is not enough that "a known risk later blossoms into reality. We must demand a virtual certainty."). Furthermore, Plaintiffs allege that Brown's supervisor ordered Brown to seek medical attention and had employees assist Brown in retrieving his phone to call a friend. (*See* Compl. ¶¶ 12-13.) Like *Applegate*, this Court finds that the decision of Brown's supervisors to entrust Brown's friend to transport him to medical care, as currently plead, does not rise to the level of intentional misconduct contemplated by N.J.S.A. 34:15-8. *See Applegate*, 2007 WL 2570224, at *3.

Accordingly, the Court will dismiss the Complaint without prejudice because Plaintiffs have failed to sufficiently plead that Defendants committed an intentional wrong which survives the WCA's exclusivity provision. *See* N.J.S.A. § 34:15-8.[2]

### b. Plaintiffs' Complaint Fails to State a Claim

While Plaintiffs' Complaint is subject to dismissal pursuant to *Laidlow* for failure to sufficiently allege that Defendants committed an intentional wrong beyond the scope of the WCA,

---

[2] Plaintiffs do not indicate whether they have pursued a statutory workers' compensation remedy through the WCA. (*See generally* Compl.) While the WCA's exclusivity provision bars Plaintiffs' Complaint as currently plead, nothing in this Opinion prohibits Plaintiffs from pursuing their statutory remedies pursuant to the WCA.

7

Defendants further argue that Plaintiffs have failed to state a claim for which relief may be granted. (Defendants' Motion to Dismiss ("MTD") Br. at 12-15.) This Court agrees.

"To assert a cause of action for wrongful death, Plaintiffs must assert (1) that Plaintiff's death was caused by a wrongful act, and (2) that Plaintiff would have been able to maintain an action for damages had he survived." *Gunter v. Twp. of Lumberton*, No. CIV. 07-4839, 2012 WL 2522883, at *11 (D.N.J. June 29, 2012), *aff'd*, 535 F. App'x 144 (3d Cir. 2013). "The evident intention of the Wrongful Death Act was to place families who lost a close family relative—because of the acts of a tortfeasor—in no worse position economically than if the relative had lived." *Aronberg v. Tolbert*, 207 N.J. 587, 603 (2011). "N.J.S.A. 2A:31–1 gives the right of an heir 'to maintain an action for damages' only if a claim could have been brought by the decedent had he lived," thus, the decedent's "heirs do not have any greater right than [the decedent] possessed himself." *Id.*

To prevail on a claim of negligence under New Jersey law, a plaintiff must prove: (1) that the defendant had a duty of care, (2) the defendant breached its duty of care, (3) proximate cause, and (4) actual damages. *See Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015). Concerning the first prong, "an employer generally has no duty to provide medical service to treat an ill or injured employee, even if the illness or injury was the result of the employer's negligence." *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1178 (3d Cir. 1994); *see also Kim v. Marina Dist. Dev. Co. LLC*, No. 09-1553, 2010 WL 2877784, at *3 (D.N.J. July 16, 2010), *aff'd*, 488 F. App'x 545 (3d Cir. 2012) (Under New Jersey law, "[t]here rests no duty upon an employer to provide medical service or other means of cure to an ill, diseased or injured employee, even though it results from the negligence of the master."). However, "if the employee, while engaged in the work of his or her employer, sustains an injury rendering him or her helpless to provide for his or her own care,

the employer must secure medical care for the employee." *Lundy*, 34 F.3d at 1178. Thus, to prevail on his negligence claim, Plaintiff is required to show that Defendants breached a duty to secure medical care for Brown. *See Smith v. Whittaker*, 160 N.J. 221, 235 (1999).

Here, Plaintiffs do not specifically identify what causes of action each count of the Complaint purportedly asserts.[3] Even if the Court were to construe the Complaint as asserting a cause of action for wrongful death, the underlying "unlawful act" alleged—failure to provide medical assistance—is not one for which Brown "would have been able to maintain an action for damages had he survived" because it is barred by the WCA's exclusivity provision, N.J.S.A. § 34:15-8. *See Gunter*, 2012 WL 2522883, at *11. Even if the WCA's bar did not apply, to the extent Plaintiffs assert that Brown's death was caused by Defendants' negligence, Plaintiffs do not allege that Defendants had a duty to provide medical assistance, nor that Brown was incapable of calling himself an ambulance, giving rise to such duty. *See Lundy*, 34 F.3d at 1178. Indeed, the Complaint contains no allegations identifying any duty that Defendants allegedly breached. *See Smith*, 160 N.J. at 235; *Paracha*, 2024 WL 5001909, at *2.

Accordingly, the Court finds that Plaintiffs have failed to state a claim for which relief can be granted.

## IV. **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. An accompanying order shall follow.

Dated: May 22, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiffs concede that "there is no direct claim for consortium associated with this complaint." (Opp. Br. at 8.) Plaintiffs contend that they state a "particular dependency claim," (*id.* at 7), which is "derivative of the injured spouse's personal injury cause of action." *Kibble v. Weeks Dredging & Const. Co.*, 161 N.J. 178, 190 (1999). Thus, to the extent Plaintiffs purport to assert a loss of consortium claim, that claim is dismissed along with the underlying claims.